## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CORDNEY SMITH,

                    Petitioner,                Case No. 2:12-cv-11036
                                                  Hon. Denise Page Hood

CARMEN PALMER,

                    Respondent.

_____/

## OPINION AND ORDER 1) DENYING RESPONDENT'S MOTION TO DISMISS [Dkt. 19], 2) DENYING AMENDED PETITION FOR A WRIT OF HABEAS CORPUS, 3) DENYING A CERTIFICATE OF APPEALABILITY, AND 4) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Cordney Smith's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted in the Wayne County Circuit Court after a bench trial of two counts of assault with intent to commit murder, MICH. COMP. LAWS. § 750.83, felon in possession of a firearm, MICH. COMP. LAWS. § 750.224f, and commission of a felony with a firearm, MICH. COMP. LAWS. § 750.227b. He was sentenced to 20-to-50 years for the assault convictions, 2-to-5 years for the felon in possession conviction, and a consecutive two years for the felony-firearm conviction.

The petition raises ten claims: 1) Petitioner was subjected to a suggestive identification procedure; 2) Petitioner's statement to police was the product of an

illegal arrest; 3) Petitioner's rights under the Confrontation Clause were violated by the admission of hearsay testimony at trial; 4) there was insufficient evidence presented at trial to support Petitioner's convictions; 5) Petitioner was denied the right to testify on his own behalf; 6) Petitioner was denied the effective assistance of counsel; 7) the prosecutor suppressed evidence favorable to the defense; 8) the trial court abused its discretion in making findings of fact; 9) Petitioner's trial counsel was ineffective for failing to locate defense witnesses; and 10) police officers lacked probable cause to arrest Petitioner.

In response to the petition, Respondent filed a motion to dismiss, contending that the petition was filed after expiration of the one-year statute of limitations.

The Court finds that the petition was timely filed, but it also finds that Petitioner's claims are without merit or are barred by his state court procedural default. The petition will be denied. The Court will also deny Petitioner a certificate of appealability, but grant him permission to proceed on appeal *in forma pauperis*.

## I. Facts and Procedural History

The case against Petitioner concerned the shooting of Derrick Agee and Jovella Caradine in a Detroit apartment building. Both Agee and Caradine had seen Petitioner standing around the apartment building for months prior to the shooting, and therefore, he was not a stranger to them. Petitioner confessed to the shooting after his

arrest.

Prior to trial, Petitioner's counsel moved before trial to suppress the identification of Petitioner as resulting from an unduly suggestive photographic show-up. Defense counsel also moved to suppress Petitioner's statement to police as the product of an unlawful arrest.

At the evidentiary hearing on the motions, Agee testified that several times on July 24, 2007, he saw a person standing outside the apartment building where Agee resided. The person was wearing blue jeans and a red shirt. Agee had seen the same person every day for at least two months. At about 6:00 p.m. that day, Agee had told the person to move away from under his window. The person responded, "You don't know who you fucking with. My name Spider."

Agee testified to seeing the same person, whom he identified as Petitioner, again at 2:00 a.m. the following morning, when Agee answered the door to the apartment building. Petitioner was wearing all black and entered the building behind the people Agee buzzed in. Petitioner shot Agee several times and ran down the stairs and out of the building. Agee looked out the window and could see Petitioner running through the alley outside the building.

On July 30, 2007, the police showed Agee a single photograph of Petitioner, which Agee identified as depicting "the guy who calls himself Spider." He testified

that the photograph did not influence his identification.

Another witness, Jovella Caradine, testified that she had seen a person she identified as Petitioner in front of the apartment building more than ten times before the incident. When the shooting happened, she got a clear look at the perpetrator, and said she had "no doubt" of the identification.

Detroit police officer Terence Sims testified that dispatch had advised him on July 29, 2007, that Petitioner, known as "Spider" was at a certain location and was wanted in connection with a shooting. Sims had reviewed statements taken from Agee and Caradine before that date and was aware that the shooter's name was reportedly "Spider." Sims authorized Mr. Smith's arrest and a scout car was dispatched. Petitioner was arrested at that location.

The trial court denied both defense motions, ruling that information from the two complainants provided probable cause to arrest Petitioner for the shooting, and that although the photographic identification procedure was improper, there was a sufficiently independent basis for the victims to identify him.

At trial, Agee testified to residing on July 24, 2007, at an apartment building on Plymouth Road in Detroit. Agee had seen Petitioner, whom Agee knew as "Spider," outside the building and lingering in the hallway every day for two or three months. Between 4:00 and 6:00 p.m., Petitioner came up under Agee's window seven

or eight times, picking something out of a bag and going the other way. At about 6:00 p.m., Agee told Petitioner not to stand under the window, and Petitioner responded that Agee "didn't know who [he was] fucking with" and that his name was "Spider." Petitioner wore a red shirt and blue jeans at that time.

Agee testified that he next saw Petitioner at about 2:00 a.m. on July 25, 2007, in the hallway of the apartment building after Agee had buzzed in Agee's girlfriend. Petitioner was wearing all black clothing. Agee asked if Petitioner was trying to enter, but Petitioner did not respond and went downstairs.

Agee testified that about fifteen minutes later, he buzzed in his neighbor and another woman. Petitioner pulled the door open, and had a pistol in his hand. Petitioner raised the pistol, Agee backpedaled, and Petitioner fired, striking Agee. Agee tried to run, but slipped on the floor and fell. Petitioner shot Agee in the chest, and then kept shooting until the gun clicked, striking Agee in the left biceps, right forearm, and the back of the right thigh. Petitioner then turned and ran out the door.

Agee testified that he went back down the hallway and told his girlfriend to call an ambulance. He looked out a side window and saw Petitioner come around through the parking lot going through an alley. Agee was treated at the hospital and released.

Sergeant Hansberry brought a photograph to Agee's residence on July 30, 2007. Agee testified to identifying Petitioner at the preliminary examination, and to

having "no doubt"that Petitioner was the shooter.

Jovella Caradine testified at trial that she resided in the same apartment building, and had seen Petitioner, also known as "Spider," around the building "numerous times" in the three months before the incident. On July 25, 2007, at about 2:00 a.m., Caradine had returned home from a nightclub and had seen Petitioner and another woman at the common entrance. The woman opened the door, and Petitioner appeared from the bushes and followed the woman inside. Petitioner wore black pants, a black jacket, and a black hat.

Caradine testified that she walked up to the second floor, saw Agee had opened the hallway door, and saw Petitioner pull out a gun and start shooting Agee. Agee fell, and Petitioner ran up and shot him again as he lay on the floor. Petitioner then pointed the gun at Caradine as she was running down the hallway, and shot her in the back and arm before continuing to shoot at Agee.

Detective Hansberry came to her residence at a later date and showed her a single photograph. She said she had "no doubt" that Petitioner was the man that shot her and would have identified him even without seeing the photograph.

Detective Sims testified at trial that Petitioner waived his *Miranda* rights and told Sims that the complainant had confronted him about selling dope outside the apartment building, that Petitioner returned, told the complainant "You remember

me," that Petitioner shot the complainant four or five times and ran, that Petitioner was not trying to hit anybody, that Petitioner just wanted the complainant to know he was not a "punk," and that Petitioner threw the gun away in a vacant house.

Based on this evidence, the trial court found Petitioner guilty of the offenses indicated above.

Following his convictions and sentences, Petitioner filed an appeal of right with the Michigan Court of Appeals. His appellate brief raised what now form Petitioner's first two claims in his amended petition as well as a third claim. Petitioner's motion to file a supplemental pro se brief was denied. On October 20, 2009, the court of appeals issued an unpublished opinion affirming Petitioner's convictions. *People v. Smith,* No. 285030, 2009 WL 3365862, at *1 (Mich. Ct. App. Oct. 20, 2009).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On April 27, 2010, the Michigan Supreme Court denied Smith's application. *People v. Smith*, 780 N.W.2d 806 (Mich. 2010).

On February 15, 2012, Petitioner filed a motion for relief from judgment in the trial court, and then an amended motion together which raised what essentially now form the remaining eight claims presented in his amended habeas petition. The trial court denied the motion in an opinion dated May 9, 2012. The trial court found that

-7-

Petitioner's motion was barred from review under Michigan Court Rule 6.508(D)(3). *See* ECF No. 21-21, p. 9.

On March 8, 2012, Petitioner filed the instant action, and soon thereafter he filed a motion to stay the case in order to complete exhaustion of his post-conviction claims. The Court granted the motion to stay. *See* ECF No. 10.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, appealing the denial of his motion for relief from judgment. On March 21, 2013, the Michigan Court of Appeals denied the application under Rule 6.508(D). *People v. Smith*, No. 313489 (Mich. Ct. App. March 21, 2013). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court. On November 25, 2013, the Michigan Supreme Court denied Petitioner's application for leave to appeal under the same court rule. *People v. Smith*, 839 N.W.2d 484 (Mich. 2013).

Petitioner filed his amended petition on January 2, 2014.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

-8-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error

-9-

correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87 (internal quotation omitted).

To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable determination of fact and that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012). However, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Analysis

### A. Statute of Limitations

Respondent filed a motion to dismiss the petition on the grounds that it was filed after expiration of the one-year statute of limitations.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year period of limitation for a habeas petition filed by a state prisoner seeking habeas relief from a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation runs

from one of four specified dates, usually either the day when the judgment becomes final by the conclusion of direct review or the day when the time for seeking such review expires.  28 U.S.C. § 2244(d)(1)(A). The limitation period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).

The limitation period began to run in this action when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. 2244(d)(1)(A). None of the other potential starting points apply to this case.

The expiration of time for seeking direct review under 28 U.S.C. § 2244(d)(1)(A) was July 26, 2010—90 days after the Michigan Supreme Court denied Smith's application for leave to appeal on April 27, 2010. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). The period of limitations began running the next day, July 27, 2010. Petitioner then had one year, until July 27, 2011, within which to file his petition, or to instead properly file an application for state post-conviction or other collateral review, which would toll the one-year statute of limitations period under 28 U.S.C. §2244(d)(2).

Respondent states that Petitioner did not file his motion for relief from judgment until February 15, 2012 – 203 days after the statute of limitations expired.

-11-

In response to the motion to dismiss, however, Petitioner indicates that he placed his motion for relief from judgment in the prison mail system on July 15, 2011, with twelve days remaining on the limitations period. Petitioner supports this assertion with a copy of a Michigan Department of Corrections legal mail disbursement authorization form indicating that his motion was delivered to prison officials for mailing on July 15, 2011, and placed in the outgoing mail on July 18, 2011. *See* ECF No. 20, p. 12. The mail was mishandled, and the motion was then resubmitted on December 29, 2011.

Although Michigan now recognizes a type of "prison mailbox rule," it is applicable only "[t]o appeals from administrative agencies, appeals from circuit court (both claims of appeal and applications for leave to appeal), and appeals from decisions of the Court of Appeals to the Supreme Court." *See* Staff Comment to February 25, 2010 Amendment, foll. Michigan Court Rule 7.105, 7.204, 7.205, 7.302. Michigan's post-conviction court rules do not contain a prison mailbox rule for the filing of a post-conviction motion for relief from judgment with the trial court. The federal mailbox rule cannot be applied by a federal habeas court to determine that a prisoner's state post-conviction pleading has been timely filed, where the mailbox rule has not been recognized by that state's appellate courts. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 603-04 (6th Cir. 2003).

-12-

Nevertheless, the AEDPA limitation is subject to equitable tolling in appropriate cases. *Holland v. Florida,* 560 U.S. 631, 645(2010). A petitioner is entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). In certain cases, delay by prison or other government officials may constitute grounds for equitable tolling. *Pliler v. Ford*, 542 U.S. 225, 235 (2004).

The Court finds that Petitioner has demonstrated that he did everything in his power to comply with the limitations period by attempting to file his motion for relief from judgment in a timely manner. The mishandling of the legal mail which resulted in the delayed filing was something that was entirely out of his control. It constitutes an extraordinary circumstance which excuses the delay in the filing of his motion for relief from judgment. But for the mishandling of his mail, his petition would have been timely filed. Accordingly, Respondent's motion to dismiss is denied, and the Court will proceed to the merits of the petition.

**B. Suggestive Identification Procedure**

Petitioner's first claim asserts that the identification testimony of the victims should have been suppressed because it resulted from impermissibly suggestive pretrial identification procedures. This claim was presented to the trial court, which

-13-

rejected it after holding a hearing, and then the Michigan Court of Appeals again rejected the claim during Petitioner's direct appeal.

The state courts found that the pretrial identification procedure was improper. The record shows that each victim was shown a single booking photograph of Petitioner five days after the incident. Petitioner was in custody, but the police elected not to conduct any sort of photographic show up or live line up identification procedure. Despite the improper procedure, Petitioner's claim was rejected because the state courts found that there was an independent basis for the victims' identification of Petitioner:

> With regard to their prior knowledge of defendant, Agee had seen defendant outside of the apartment building every day for two months before the crime occurred. Although he did not know defendant personally, Agee spoke to defendant less than 24 hours before the incident and he saw defendant several times on the day of the crime. Caradine testified that, although she did not know defendant personally, she had seen defendant repeatedly around the apartment building over a period of a few months and had seen him earlier on the day of the incident.

> Both victims also saw defendant while he was committing the crime. Agee testified that he saw defendant with a gun from a distance of ten feet as he opened the door to the hallway on the second floor. Caradine saw defendant outside of the apartment building, which was well lit by a streetlight, just before the incident occurred. She walked inside with defendant and then up to the second floor. When Agee opened the door on the second floor, she walked past him and then turned and saw defendant start shooting in the well-lit hallway.

-14-

About five days elapsed between the crime and the identification and both victims testified that they had no doubt defendant was the shooter. Caradine was unable to provide a description of the shooter, but she told the police officer that if she saw him again, she would know. Agee's description had some discrepancies, but there was no prior identification or failure to identify defendant on the part of either victim, nor was there any prior identification of someone other than defendant. Additionally, no evidence indicates that the victims' mental states at the time of the crime affected their identifications or that defendant had any special features.

The trial court ruled that there was an independent basis for the identifications because both victims had prior knowledge of defendant and they both had the opportunity to view him during the crime. We hold that the trial court did not clearly err when it ruled that there was an independent basis for both victims to identify defendant in court. It is undisputed that they both saw defendant regularly before the crime and had ample opportunity to see defendant commit the crime. This provided an independent basis for their subsequent in-court identifications.

*Smith*, 2009 WL 3365862, at *2.

Under clearly established Supreme Court law, an identification procedure violates a defendant's right to due process if it was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *Neil v. Biggers*, 409 U.S. 188 (1972). However, even if the confrontation was unnecessarily suggestive, if the identification is nonetheless reliable, it will be admissible. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000). The "primary evil to be avoided is

a very substantial likelihood of irreparable misidentification." *Neil*, 409 U.S. at 198 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

Showing a witness a single photograph of a suspect has been recognized as being extremely suggestive. *See, e.g., Simmons*, 390 U.S. at 383 ("This danger [of misidentification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized."); *Carter v. Bell*, 218 F.3d 581, 605-606 (6th Cir. 2000). Nonetheless, in *Manson v. Brathwaite*, supra, the United States Supreme Court refused to adopt a per se rule that an identification based upon examination of a single photograph would be inadmissible at trial. *See also United States v. Causey*, 834 F.2d 1277 (6th Cir. 1987) (identification reliable despite single photo identification).

In judging reliability, the totality of the circumstances are evaluated, including the factors described in *Manson* and *Biggers*: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification. *Manson*, 432 U.S. at 114;

*Biggers*, 409 U.S. at 199-200.

Applying these factors, the decision of the Michigan Court of Appeals that there was a basis for the identification independent of the photograph, was neither contrary to nor an unreasonable application of federal law. The witnesses had observed Petitioner for a period of months prior to the crime. They did not know his name, but they were very familiar with his appearance. Indeed, this is hardly a case of stranger identification at all – it is more akin to witnesses identifying a known individual as the perpetrator of a crime. The only purpose of showing the photograph to the victims was to enable the police to match the person they had in custody to the known person the victims saw commit the crime. The state court adjudication of this claim was reasonable.

## C. Illegal Arrest

Petitioner asserts that his arrest was illegal under the Fourth Amendment because the police lacked probable cause. He argues that his resulting statement to police, in which he confessed to the shootings, should have been suppressed as fruits of the illegal arrest.

Petitioner's Fourth Amendment challenge to the admission of the evidence in this case is non-cognizable on federal habeas review. A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a

full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).

Therefore, on federal habeas review, a federal court cannot re-examine a petitioner's Fourth Amendment claim that his statement to police should have been suppressed as "poisonous fruit" of his illegal arrest, where the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial. *See Wilson v. Straub*, 185 F. Supp. 2d 766, 770-71 (E.D. Mich. 2002); *See also Walendzinski v. Renico*, 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005); *Monroe v. Smith*, 197 F. Supp. 2d 753, 766 (E.D. Mich. 2001).

Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts. He filed a motion to suppress his statement in the trial court, and an evidentiary hearing was held on the claim. After his conviction, Petitioner presented the claim to the Michigan appellate courts, which denied relief. Accordingly, Petitioner's Fourth Amendment claim is barred under *Stone*.

**D. Procedural Default**

The remainder of Petitioner's claims were not presented to the state courts during his direct appeal. Rather, he presented them in his motion for relief from judgment and the appeal that followed its denial. These claims are procedurally barred because Petitioner did not demonstrate adequate cause or prejudice under Michigan Court Rule 6.508(D)(3) for failing to raise the claims on direct review.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). In an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention Petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are

-20-

ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id*.

The trial court, in rejecting petitioner's post-conviction claims, indicated that Petitioner failed to satisfy the "good cause" and "actual prejudice" requirement under Rule 6.508(D)(3) for failing to raise her claims during his appeal of right. Such reliance on Rule 6.508(D)(3) was "an adequate and independent state ground" on which the state could rely to foreclose review. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).

The fact that the trial judge also discussed the merits of Petitioner's claims in addition to invoking the provisions of Rule 6.508(D)(3) to reject Petitioner's claims does not alter this analysis. *See Alvarez v. Straub*, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). A federal court need not reach the merits of a habeas petition where the last state court opinion clearly and expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits. *McBee v. Abramajtys*, 929 F. 2d 264, 267 (6th Cir. 1991). Petitioner's remaining claims that he raised for the first time on post-conviction review are therefore procedurally

defaulted.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his failure to raise these claims on direct appeal. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good arguments . . . -in a verbal mound made up of strong and weak contentions." *Id*. at 463 U.S. at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and

focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F. 3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised in his post-conviction motion. Appellate counsel filed a substantial brief on appeal which raised three substantial claims. Indeed, the claims attacked, as they had to, the overwhelming strength of the prosecutor's case by attempting to assert that the identification testimony and confession should have been suppressed. While the claims are without merit, Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising additional claims was deficient or unreasonable. Indeed, Petitioner's other claims, which do not account for the overwhelming evidence of his guilt would have done nothing more than water-down an appellate brief that focused on the two critical aspects of the case. Because the

defaulted claims are not "dead bang winners," Petitioner fails to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F. 3d 674, 682-83 (6th Cir. 2000).

Additionally, Petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider the procedurally defaulted claims as grounds for a writ of habeas corpus in spite of the procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review Petitioner's defaulted claims on the merits.

Finally, assuming that Petitioner could establish cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims are meritless. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F. 3d 883, 891 (6th Cir. 2007). Again, for the reasons stated by the trial court in its alternative analysis, Petitioner fails to show that his claims have merit. Petitioner's remaining claims are therefore barred by procedural default.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.

The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of his claims. The Court will, however, grant Petitioner permission to appeal *in forma pauperis*, because an appeal would not be frivolous.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Respondent's motion to dismiss is **DENIED.**

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

-25-

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to appeal *in forma pauperis* is

**GRANTED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge


Dated: September 28, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2015, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager